JESSE STREETS, Plaintiff, *v.* THE GRAND TRUNK RAILWAY COMPANY and THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Defendants.

*Negligence — collision on a railroad resulting from the failure of an engineer to see a semaphore obscured by fog — injury to an employee riding in violation of rules upon the engine — competency of engineer — speed of engine — right to rely upon attention being given to the semaphore — contributory negligence.*

In an action brought against the Grand Trunk Railway Company and the New York Central and Hudson River Railroad Company, to recover damages for injuries sustained by the plaintiff, it appeared that the New York Central and Hudson River Railroad Company owned a double-track railroad extending from Buffalo to Black Rock, a distance of four miles, and that it permitted the Grand Trunk Railway Company to use the same; that a great number of trains and light engines passed over this section of the railroad daily, and that, for the protection of such trains and engines, semaphores had been erected at intervals along the track, each of which semaphores indicated to the employees in charge of approaching trains whether or not the space between that and the next semaphore was occupied.

It further appeared that the plaintiff was a wiper employed by the Grand Trunk Railway Company, and that between six and seven o'clock on the morning of the accident he was riding, solely for his own convenience and in violation of the rules of the Grand Trunk Railway Company, upon an engine belonging to the latter company; that, on account of the dense fog prevailing at the time, the engineer was unable to see a semaphore, which had been set at danger, and ran past it without making any further effort to ascertain what it indicated; that midway between that semaphore and the next one, the engine, while running at a speed of twenty-five miles an hour, collided with a New York Central freight train.

The engineer in charge of the Grand Trunk Railway Company's engine was an experienced and trusted employee, but had not been over this section of the railroad more than three or four times in as many years previous to the accident. It appeared, however, that he had passed by the point where the semaphore in question was located a few moments before the accident and he admitted that he knew its general location.

*Held,* that, in view of the engineer's experience and knowledge of the situation, it could not be said that the Grand Trunk Railway Company was negligent in permitting him to run an engine over the section of the railroad in question;

That, as it did not appear that the speed at which the engine was traveling had anything to do with the happening of the accident, it could not be said that the Grand Trunk Railroad Company was negligent in omitting to prescribe a maximum speed for its engines;

That the New York Central and Hudson River Railroad Company was not guilty of negligence, as the persons in charge of its train had a right to assume that

those in charge of the Grand Trunk Railway Company's engine would heed the warning given by the semaphore in question, if they saw it, and that if, for any reason, such semaphore could not be seen, the persons in charge of such engine would not run past the point where the semaphore was located without having ascertained the exact condition of the tracks beyond;

That, as it appeared that the plaintiff was familiar with the method of operating trains on the railroad and the location of the semaphores, crossovers, etc., it was his duty, when the engineer passed the point where the semaphore was located without knowing whether it indicated danger or safety, to call the attention of the engineer to that fact, and that, as he had omitted to do so, it could not be said that he was free from contributory negligence.

MOTION by the plaintiff, Jesse Streets, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance upon a nonsuit directed as to the defendant The Grand Trunk Railway Company, and the direction of a verdict in favor of the defendant The New York Central and Hudson River Railroad Company, after a trial at the Erie Trial Term.

The action was brought to recover damages for injuries sustained by the plaintiff in a collision between a locomotive being operated by the defendant The Grand Trunk Railway Company, on which the plaintiff was riding at the time, and a train of freight cars being operated by the defendant The New York Central and Hudson River Railroad Company, on the 1st day of July, 1897, alleged to have been caused through the joint negligence of the defendants.

The action was tried at a Trial Term of the Supreme Court held in and for the county of Erie on the 7th day of January, 1902. At the close of plaintiff's evidence the court granted a motion, made on behalf of the defendant The Grand Trunk Railway Company, that the plaintiff be nonsuited; and at the close of the whole case, on motion of counsel for the defendant The New York Central and Hudson River Railroad Company, a verdict was directed in its favor, and an order was made directing that plaintiff's motion for a new trial upon exceptions be heard in this court in the first instance.

*John Cunneen,* for the plaintiff.

*Adelbert Moot,* for the defendant The Grand Trunk Railway Company.

*Charles A. Pooley*, for the defendant The New York Central and Hudson River Railroad Company.

McLENNAN, J.:

At the time of the accident and for many years prior the defendant New York Central and Hudson River Railroad Company was the owner of a double-track railroad extending from Exchange street in the city of Buffalo northerly along the Niagara river through Black Rock to Niagara Falls. From Exchange street to Black Rock, a distance of about four miles, there were located upon either side of the tracks railroad yards, factories and other business places, to which were extended sidings which were connected with the main tracks by switches, making a large number of crossovers, so called, from one main track to the other. The westerly track, or the one next to the river and lake, was the south-bound track, and was used by engines and trains going south, or from Black Rock and Niagara Falls to Exchange street. The easterly track was used by engines and trains going north, or from Exchange street to Black Rock or beyond. By arrangement between the defendants these tracks were used by them in common for the purposes of their business respectively, and under regulations or rules prescribed by the New York Central and Hudson River Railroad Company.

At the time of the accident about one hundred trains, including light engines used for switching purposes, as well as regular passenger and freight trains, passed over these two tracks daily. In order to reach the siding extending into the yards, and to the factories and other business places along the route, engines and cars were at frequent intervals being moved from one main track to the other, and across the respective tracks. This apparently was necessary for the transaction of the business of the defendants, which was of the same general character at the time of the collision as it had been for many years prior. The passenger trains and a few of the freight trains ran upon schedule time, and a time table was furnished to the employees showing the time at which such trains were moved upon the tracks. The light engines, or switch engines, and the wild cat trains, so called, of which there were a large number, were not operated under any schedule, but were run over these tracks and across the same as occasion required, those operating

them being required, under the rules of the company, to protect themselves and their respective trains by the use of signals which were prescribed by the general rules of the defendants.

The train dispatcher of the defendant New York Central and Hudson River Railroad Company, who was called as a witness by the plaintiff, testified: It is the business of " the engineers of these trains and engines that run without orders * * * to know what trains are approaching from either direction, and to keep out of the way of them. When they are making these cross-overs they are supposed to * * * protect themselves; * * * they are supposed to protect themselves when they cross from one track to another where they do not belong. You cannot get into that yard unless you do cross the north track; when a man crosses a track he is supposed to protect himself."

The witness stated that each of the engineers and trainmen operating upon those tracks was provided with the rules of the company. The rules of the defendant the New York Central and Hudson River Railroad Company, being the only ones which it is claimed relate to the questions involved upon this appeal, are as follows :

" Rule 24. Flags of the proper color must be used by day, and lamps of the proper color by night or whenever from fog or other cause the day signals cannot be clearly seen."

" Rule 30. An explosive cap or torpedo, placed on the top of the rail, is a signal to be used in addition to the regular signals; the explosion of one torpedo is a signal to stop immediately; the explosion of two torpedoes is a signal to reduce speed immediately, and look out for a danger signal."

" Rule 99. When a train is detained from any cause at any of its usual stops, or when detained by an accident or obstruction, or stops at any unusual point, the flagman must immediately go back with danger signals to stop any train moving in the same direction. At a point three-quarters of a mile from the rear of his train he must place one torpedo on the rail on the engineman's side; he must then continue to go back at least one mile from the rear of his train, and place two torpedoes on the rail on the engineman's side, ten yards apart (one rail length), when he may return to a point three-quarters of a mile from the rear of his train, where he must remain until an approaching train has been stopped or he is recalled by the

whistle of his engine. When he comes in he will remove the torpedo nearest the train, but the two torpedoes must be left on the track as a caution signal to any following train.

" Should the flagman be recalled before reaching the required distance he will place two torpedoes on the rail on the engineman's side, ten yards apart (one rail length), and will immediately return to his train unless an approaching train is within sight or hearing. If from any cause speed is reduced, the conductor and flagman will be held responsible for fully protecting the rear of the train by the use of proper signals. .

"If the accident or obstruction occurs upon single track, and it becomes necessary to protect the front of the train, or if any other track is obstructed, the forward brakeman or trainman must go forward and use the same precautions. If he is unable to go, the fireman must be sent in his place. Conductors and enginemen will be held strictly responsible for the prompt enforcement of this rule."

It also appears that the accident in question, which was caused by a light engine of the Grand Trunk Railway Company, which was going north, coming in collision with some freight cars of the New York Central and Hudson River Railroad Company, which were going south, and which were being moved across the track on which the Grand Trunk engine was approaching, occurred at a point about midway between the two semaphores which were about one mile apart. These semaphores were for the purpose of indicating to the engineer or trainmen whether or not the tracks between the two were or were not occupied by other trains; in other words, when an engineer going north on a locomotive came to a semaphore, if the arm was extended, under the rules of the company which had been in vogue for years, it would indicate to him that the tracks between that semaphore and the one next north were occupied by some other train or engine, and that it was unsafe for him to proceed further. If the arm of the semaphore was not extended it was information to him that the tracks were clear, and that he could safely proceed, at least until the next semaphore was reached.

On the day in question, between six and seven o'clock in the morning, it was very foggy — not an unusual condition in that locality at that season of the year — and the engineer on the Grand

Trunk engine could not see the semaphore, although he stated that he knew substantially where it was, and passed the point without ascertaining whether or not it indicated that the tracks beyond and between it and the next semaphore were free from trains, with the result that he came in collision with a train of the New York Central and Hudson River railroad, which was not scheduled, which was crossing from the south-bound onto the north-bound track, on which his locomotive was proceeding. The plaintiff, who was an employee of the Grand Trunk Railway Company, and was engaged as a wiper in its engine house, was riding to his home on the engine of the Grand Trunk railway, solely for his own convenience and in violation of the express rules of the company, and in the collision described sustained the injuries for which he seeks to recover in this action.

As we understand the plaintiff's contention, it is that the defendant the Grand Trunk Railway Company was negligent in permitting the engineer with whom the plaintiff was riding to operate the engine under the conditions which then existed, because he was not familiar with the situation and conditions, he only having passed over those tracks four or five times in as many years previous to the accident. In other words, that the engineer was not a person competent to discharge the duties imposed upon him, and that the defendant the Grand Trunk Railway Company was negligent in selecting him for such duties. And, *second*, because it failed to prescribe a proper rate of speed at which engines running light should be run over this track. That the defendant the New York Central and Hudson River Railroad Company is liable because it failed to adopt adequate and sufficient rules for the protection of those operating trains or engines upon that road, and because of the fact that it knew fogs were likely to arise which make it impossible to see the semaphores, and practically make the semaphores useless, and that other means should have been adopted to protect trains which were liable to pass such semaphores because they could not be seen, and thus come in collision with a train which might be between such semaphores.

The evidence fails to establish negligence on the part of the defendant the Grand Trunk Railway Company in the respects claimed by plaintiff's counsel. The engineer who was operating its

engine had been in the employ of the company in that capacity for nine years prior to the accident. There is no suggestion that he was not an experienced and trusty engineer, or that he had ever failed in the performance of any duty previous to the day in question. It appears that he had been over the road in question but three or four times in as many years just prior to the accident, but he knew where the semaphore was located; knew its purpose; knew the method of operating the road; knew fully about the density of the fog, and he simply ran his engine past the semaphore, without knowing whether it indicated that the tracks beyond were obstructed or not. He had just passed over the south-bound track between these semaphores with his engine and a train of cars, and was going back with his engine light. He was sworn as a witness and testified: "On the morning of the accident I did not notice whether the semaphore arm near B. R. coal trestle was up or down; I knew at that time that if the semaphore arm was against me, I should stop my engine or slow it down; however, I could not distinguish the semaphore arm or see in which way it was, on account of the morning being very foggy, and I was not very well acquainted with the locality at that time; still, I knew that that semaphore was there and what it was used for, although I did not know exactly where it was."

There is no basis for the suggestion that the Grand Trunk Railway Company was negligent in permitting an engineer with such an experience, and with so complete a knowledge of the situation, to run a light engine over those tracks which he had traversed immediately before with a train of cars. Neither was it negligent in not having prescribed a maximum rate of speed at which the engine which he was operating might run. If the semaphore had indicated safety, it could not be said that it would have been negligent to run his engine twenty or twenty-five miles an hour, as he was doing at the time. At all events, there is no evidence in the case from which a jury would have been justified in finding that the collision in any manner resulted because of the rate of speed at which the locomotive was running; because it was running twenty-five miles an hour instead of eight or ten, or at a still lower rate of speed. The accident was due to the fact that the engineer passed the point where he knew the semaphore was located without ascer-

taining whether or not the track beyond was clear. The most experienced engineer may pass a signal without observing it because invisible on account of a storm or other atmospheric conditions, and thus cause a collision, but solely because of that fact and because he did so on one occasion, it cannot be said that he was incompetent, and that the railroad company which employed him would be liable for his act on the ground of negligence in employing an incompetent servant.

Neither was the New York Central and Hudson River Railroad Company guilty of negligence. Its train going south on the southbound track passed the semaphore, which was then set at danger and indicated to those in charge of all other trains that the tracks between the two semaphores were occupied, and those in charge of the New York Central train had a right to assume that the warning given by the semaphore would be heeded if seen, or that, if for any reason it could not be seen, the place where it was known to be located would not be passed until the exact situation of the tracks beyond was known.

If an engineer on a freight train is given orders to run to a certain siding, the location of which he knows, and to go upon it in order to give a passenger train going in the opposite direction the right of way, it is no excuse for running past the siding that the switch light could not be seen on account of fog or for any other reason, and the engineer of the passenger train would not be guilty of negligence because he failed to anticipate that the engineer might run past the siding for any such reason; but he would have a right to assume that the siding would not be passed, notwithstanding any conditions of the atmosphere which might exist. Any other rule or practice would render the operation of railroad trains almost impossible. The New York Central train was where it properly belonged, and was being operated strictly in accordance with the rules applicable to it. The two semaphores, midway between which the train then was, were for the express purpose of protecting it, and were ample for that purpose, if the warning given by them had been ascertained and heeded. The rule of the company in relation to the use of torpedoes and red lights, and requiring trainmen to go ahead of or behind the trains, has, as suggested by the learned trial court, no application to the operation of trains situate

as the one in question was. The place of the accident was substantially a railroad yard. The schedule trains, whether passenger or freight, of course had the right of way. The switch engines, whether light or engaged in shifting cars, were protected at the place in question by the semaphores. If torpedoes were to be used every time an engine went upon a crossover in a place such as this is described to be, confusion and increased danger would be the result. It is difficult to imagine light engines and those engaged in shifting cars in a railroad yard being operated, even on a foggy morning, by the use of torpedoes; at all events, there is no evidence which suggests that any better or more improved method of operating a railroad situated as this one was has been devised, than that which was in vogue upon this railroad.

The cause of the accident is plain. The train of the New York Central and Hudson River Railroad Company passed the semaphore, which was immediately set at danger, and proceeded to do its switching work between that semaphore and the one beyond. The engineer of the Grand Trunk Railway Company passed into this space with the semaphore set against him; set so as to indicate that there was a train between the two. His excuse, of course, was that because of the fog he did not see and could not see the semaphore; but he stated, and there is no evidence to contradict him, that he knew the semaphore was there, and knew that it and it alone, under the rules of the company, could indicate whether or not it was safe for him to proceed. Without taking any means to ascertain whether it was safe or not, he proceeded and the accident resulted. As we have seen, he was an experienced engineer. Nothing, so far as is disclosed by the evidence, had come to the knowledge of the Grand Trunk Railway Company to indicate to it that he was not in every way qualified to discharge the duties of engineer. The fact that he was not accustomed to run over this road was not the cause of the accident, because he testified that he had been over the road but a few minutes before; that he knew the place where the semaphore was located, or substantially the place; that he knew its purpose and, in effect, that he ought not to have proceeded until it indicated to him whether the track was clear or not.

The plaintiff was not a passenger of the Grand Trunk Railway Company, even assuming that it knew that he and other of its

employees were habitually violating its express rules which pro-
hibited them, under any circumstances, from riding upon the
engine, as he was doing upon the occasion in question. He was an
employee of the defendant and a co-employee of the engineer, and,
therefore, the defendant the Grand Trunk Railway Company was
not liable to the plaintiff for the negligence of the engineer.

The plaintiff had been in the employ of the Grand Trunk Rail-
way Company for ten years prior to the accident. He had worked
in the vicinity of Black Rock and near where the accident occurred
for seven years, going back and forth on the engine. He testified
that he knew the situation of the tracks; knew where the cross-
overs were, and where the semaphores were. He was riding on the
engine for his own accommodation. He stated that he knew at the
time pretty near where the semaphore in question was; that he
tried to see it and could not because of the fog, and knew that they
were passing the place where it was located without any of them
being able to see it. It is also evident from his testimony that the
plaintiff knew how trains were operated upon the road in question;
that he knew fully the conditions which existed; was fully informed
as to the tracks, the location of the semaphores, crossovers, etc., as
well as the manner in which the road was operated. The plaintiff,
when passing the place where the semaphore was, although aware
of the fact, said nothing, did nothing, to cause the engineer to slow
up or stop his engine. He made no effort to avoid the accident
which must almost necessarily occur in case the semaphore indi-
cated danger. He was an experienced railroad man, and it clearly
was his duty, under the circumstances, to have called the attention
of the engineer to the fact that they were passing the point where
the semaphore was located without knowing whether it indicated
danger or safety. At all events he was under obligations to have
done or have attempted to do something to avoid the accident
which he knew was liable to occur by reason of the failure to
observe the semaphore. Under all the circumstances it cannot be
said that the plaintiff fairly met the burden of proof to establish
that he himself was free from negligence which contributed to the
injury.

These views lead to the conclusion that the plaintiff's exceptions
should be overruled, the motion for a new trial denied, and judg-

ment ordered for the defendants dismissing plaintiff's complaint, with costs.

WILLIAMS, HISCOCK and DAVY, JJ., concurred; SPRING, J., concurred in result.

Plaintiff's exceptions overruled, motion for new trial denied, and judgment ordered for the defendants, with costs.