This action was brought under the Employers' Liability Act to recover for injuries sustained by plaintiff as the result of a collision while in the employ of defendant as a locomotive engineer in October, 1908. At the time, plaintiff in the course of his duties was moving his locomotive, which was in the forward motion and had no load except a caboose which it was pushing, over one arm of a "Y" on to one of defendant's main tracks, and where it came into collision with a passenger train. The alleged grounds of negligence are, first, that the defendant erroneously gave plaintiff a signal which induced him to go on the passenger track against the current of traffic without giving appropriate counter signals to stop trains moving on that track, and, second, that it furnished him with a leaky engine which permitted so much steam to escape that he could not see a controlling signal even though it was set against him. These claims will be briefly discussed in the order stated.
As plaintiff moved over the "Y" to the passenger track and about ninety feet before he reached the place of *Page 328 
collision, he was compelled to pass a stub switch whereon was a signal which governed his right to proceed beyond it, and most of the evidence in the case deals directly or indirectly with the condition of the light on this switch as plaintiff approached and went by it. There were interlocking signals, and if the light which it gave plaintiff was green, he had the right to assume that trains would be stopped on the passenger track and that he might go where he did; if the light was purple, it was a signal which forbade passage beyond the switch.
There are three theories about the condition of this switch light as plaintiff approached it. One is that it was at all times set at safety for him; a second one that it was at all times set at danger and against his right to pass it; a third one by the plaintiff that being at first set at safety for him, it was subsequently and improperly changed to danger without his knowledge.
While a large amount of evidence was introduced by defendant tending to show that at all times this switch light was set against plaintiff, I think that there was some evidence given by plaintiff himself of an observation made by him near Hertel avenue when four or five hundred feet distant from the switch which permitted a jury to say that at that time the light was green and authorized him to proceed, and that this being so, there was a rule which prohibited changing the signal while he was moving his engine, and wherefrom, in connection with the other evidence, the jury had the right to draw the conclusion that if the green light was shown to plaintiff when he made his aforesaid observation it continued and was not changed before he passed the switch.
I shall assume, for the purposes of this discussion and without consideration of it, that the evidence would have permitted the jury to find the opposite theory of the plaintiff that the signal may have been changed from safety to danger after he observed it at Hertel avenue and before the accident and which might account for its *Page 329 
being green at one time and purple at another; also that the defendant did supply plaintiff with an engine which leaked steam to such a degree that it made it difficult for him to see such signal as was displayed on the switch in question. Taking the view and making the assumptions thus stated we come to the proposition strenuously urged by the defendant that plaintiff was guilty of contributory negligence as a matter of law.
He undoubtedly was so if at the time when he observed the signal from the vicinity of Hertel avenue such signal was set at danger. He says he was able to see the signal at that point and this being so if it was set against him he had no right to proceed unless it was thereafter changed to safety, and of this there is no claim. But was the plaintiff guilty of contributory negligence as matter of law because he approached and passed the signal without personally observing that it had been changed to danger after he left Hertel avenue if that was the fact as claimed by him? It seems to be clear from all of the evidence that plaintiff was not permitted to go from Hertel avenue past the signal without further observation of it by some one. The evidence of his own efforts to see it and of the presence of the switchman on the front end of the caboose as a signalman, hereafter to be considered, sufficiently indicates that there was a continuing duty to watch this signal as it was approached and passed. If this duty to observe the signal had rested upon plaintiff personally and exclusively and this had been the only method by which to ascertain its condition, I do not think he would have been excused from the discharge of such duty by the alleged leaky condition of his engine as urged in his behalf. He was moving into a situation of grave potential danger not only to himself but to other employees and to passengers. His only authority for doing this was a certain signal and if he was charged with the responsibility of personally seeing whether this signal was exhibited he ought not to be relieved from meeting this responsibility *Page 330 
except for some extremely good and convincing reason. I do not think that the escape of some extra steam tending to obscure his vision would be such a reason for relieving him from seeing the signal as he passed over the space of 400 or 500 feet between it and Hertel avenue. His movements were not controlled by any emergency. His engine was not moving on any schedule. It was going at a rate of only seven miles an hour. It was light and he could have stopped in a few feet. It would have been a very simple matter to have stopped or slackened his speed if necessary as he passed the signal in order to observe its light. An engineer moving his engine into a position where if wrong he might endanger not only his own life but the lives of hundreds of others, ought not to be excused from the performance of some very important duty in the interest of safety by some inconsequential obstacle. Therefore, if the duty had rested solely upon plaintiff of reading the signal, I think the escape of steam would not have excused him and that he would have been guilty of negligence as matter of law, and for this reason I do not think the negligence of the defendant in furnishing a leaky engine, which I have assumed, becomes a material element in the disposition of the case. (Streets v. Grand Trunk Ry. Co., 76 App. Div. 480; affd., 178 N.Y. 553.)
But these were not the exact conditions which surrounded plaintiff. Attention has been called to the rule which seems to prescribe that the switch signal if set at safety when he was at Hertel avenue should not be changed as he approached. I suppose this rule might be subject to variation under some sudden emergency, but not under the conditions which prevailed on this occasion. In addition there were the rule and practice which provided for stationing on the front end of the caboose which plaintiff was pushing a brakeman for the purpose of giving signals, and this was done. Plaintiff testified that this *Page 331 
brakeman gave him signals to proceed slowly until he had passed the switch when the signals were changed or became confused, but too late to enable him to avoid the accident. There also was evidence that the fireman after making some sort of an observation told plaintiff that the way was clear. I think that in view of all of this evidence a jury would have had the right to say that plaintiff being unable to see the switch light himself might rely on the signal to be given to him by the brakeman without being guilty of contributory negligence.
But while plaintiff in thus choosing to rely on some one else rather than read the signals for himself escapes the imputation of contributary negligence as a matter of law, he encounters another source of difficulty. Within the decision made by this court in Hallock v. N.Y., O. W.R.R. Co. (197 N.Y. 450, 455) the brakeman was engaged in performing a mere detail of operation in connection with what was really a switching movement and did not stand in the place of the employer under the Barnes Act, so called, but occupied the position of an ordinary co-employee. In the latter case Chief Judge CULLEN wrote for the court as follows: "The rear brakeman (who as in this case was stationed to give signals) was not a vice-principal within the provisions of this statute (the Barnes Act). His duty to signal or convey information to the engineer of when the train had approached the point at which it should be stopped, a thing which the engineer himself could not observe because of the position of the engine at the rear of the train, did not, in any proper sense of the term, give him authority to control or direct the engineer in the movement of the train. The direction and control referred to in the statute means that which is conferred by or proceeds from superior authority, and not from the mere fact that the engineer had to rely on an inferior employee to discern something which he could not see for himself."
There is no doubt that this brakeman was able to see *Page 332 
the switch light as it was approached. He insists by his evidence that it was set at danger and that by appropriate signal he warned the plaintiff of this condition. But whatever the truth may be as to the character of the signal which he gave to plaintiff there is no question that he could see and know perfectly the character of the signal which was being displayed on the switch. If he read this signal correctly and gave plaintiff the proper sign to stop, then of course plaintiff was guilty of negligence in going on. If he read the signal incorrectly or gave plaintiff the wrong signal, as is in effect claimed, then we have a case of negligence on the part of a co-employee which has not been changed by the statute and which is not chargeable to the employer but is a bar to the right to recover.
Error was committed by the trial court in connection with this phase of the case. Plaintiff's counsel apparently desiring to secure an exception and preserve his point, made a request for instructions to the jury on this point, and the court charged as requested, that "Mullen (the brakeman on the forward end of the caboose) was a vice-principal for whose carelessness or negligence the defendant was liable." Subsequently, by consent of plaintiff's counsel who evidently had doubts of the correctness of his request, this instruction was withdrawn, but thereafter the court in effect repeated its error by refusing to charge as requested by defendant's counsel, that if "the accident was due to the sole negligence of Mullen in transmitting signals it was the negligence of a fellow-servant and there can be no recovery."
This was substantial error which very probably produced the result which was arrived at by the jury. The jury might very well have reached the conclusion on all of the evidence that plaintiff was mistaken in reading the switch signal when he was at Hertel avenue, but readily may have thought that the brakeman by his signal reassured him and led him to go on the passenger track, and *Page 333 
that under the refusal to give the instructions referred to the defendant was liable for the action of the brakeman, even if it was in plain violation of the facts and of his duty thereon.
The judgment should be reversed and a new trial granted, with costs to abide the event.
WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK, HOGAN and CARDOZO, JJ., concur; POUND, J., not voting.
Judgment reversed, etc.